

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON EDWARDS,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO; et al.,<br><br>    Defendants. | Case No.: 3:24-cv-01118-JAH-SBC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>**[ECF Nos. 32, 33]** |

  Pending before the Court is Plaintiff Cameron Edwards's ("Plaintiff") motion for a temporary restraining order ("TRO") filed on April 29, 2025. ECF No. 33. Plaintiff requests that this Court issue a TRO directing the City of San Diego to issue an order providing specific guidance to the San Diego Police Department on how police officers engage in the "dominant aggressor" determination when responding to a domestic violence dispute as required by the California Penal Code. ECF No. 33-1 at 14.

## BACKGROUND

  Plaintiff maintains that he left an abusive relationship in March 2024 and obtained a domestic violence restraining order against his abuser. *Id.* at 2-3. Plaintiff contends that on April 16, 2024, three domestic violence incidents occurred where officers of the San Diego Police Department became involved. *Id.* at 3. In all three incidents, Plaintiff argues officers did not consider the dominant aggressor factors under California Penal Code

§§ 836(c) and 13701, and instead took actions against Plaintiff under the City of San Diego's Procedure 4.04. According to Plaintiff, the officers (1) did not conduct a dominant aggressor analysis and produced a written report that did not consider the dominant aggressor analysis or mention the term at all, (2) entered Plaintiff's home without his consent and based on the purported consent of Plaintiff's abuser, and proceeded to question Plaintiff, and (3) spoke with Plaintiff's abuser and indicated that Plaintiff was at his residence, allowing the abuser to monitor Plaintiff. *Id.* at 3. In applying for a TRO from this Court, Plaintiff argues that the dominant aggressor factors present in the California Penal Code place a mandatory duty on police officers within the state,[1] that the inconsistent application of domestic violence policies by police departments frustrates the legislative intent and plain language of California Penal Code §§ 13701 and 836, and that the injury Plaintiff suffers is the lack of compliance by the San Diego Police Department with state law. *Id.* at 8. Plaintiff also notes that this Court denied his motion for a preliminary injunction on December 6, 2024, wherein Plaintiff sought relief "requiring the City of San Diego [to] amend Procedure 4.04 to include consideration of all the factors listed in the dominant aggressor procedure found in P.C. §§ 137901 and 836." *Id.* at 3-4.

## **LEGAL STANDARD**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court may grant a TRO to prevent "immediate and irreparable injury." FED. R. CIV. P. 65(b). The purpose of a TRO is to serve as a temporary remedy that prevents irreparable harm before a preliminary injunction hearing may be held. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). The legal standard that applies to a motion for a TRO is the same as the one applied in a motion for a preliminary

---

[1] The four factors police officers must make reasonable efforts to analyze include: (1) the intent of the law to protect victims of domestic violence from continuing abuse, (2) the threats creating fear of physical injury, (3) the history of domestic violence between the persons involved, and (4) whether either person acted in self-defense. CAL. PEN. CODE §§ 836(c)(3), 13701(b).

injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). An applicant seeking a TRO is required to demonstrate "immediate and irreparable injury, loss, or damage." FED. R. CIV. P. 65(b)(1)(A). "Speculative injury does not constitute irreparable injury" for the purposes of granting injunctive relief. *Caribbean Marine Serv. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). The applicant cannot demonstrate immediate injury when (1) purported harm to the applicant relies on the future conduct of third parties and (2) the applicant cannot demonstrate immediate risk of injury by those third parties. *City of Los Angeles v. Lyons*, 461 U.S. 95, 106-107 (1983).

## DISCUSSION

Plaintiff contends he faces an imminent threat of the application of Procedure 4.04 by the San Diego Police Department and imminent harm from the police officers who will respond to a future domestic altercation involving the Plaintiff. ECF No. 33-1 at 11. Plaintiff alleges that he is now dating. *Id.* Plaintiff also cites to national statistics purporting to show that a significant proportion of males who were identified as victims in prior domestic violence incidents, and who were involved in new domestic violence incidents, were subsequently identified by police as suspects. *Id.*[2] Plaintiff also contends that in half of domestic violence disputes in San Diego, police officers failed to interview both parties as mandated by law. *Id.* at 12.

**A. Imminent Harm**

Plaintiff's allegations of imminent harm require multiple steps involving third parties, including (1) that Plaintiff will be involved in an altercation with his partner, (2) that the police will be called, (3) that the police will apply Procedure 4.04 and misidentify the dominant aggressor, and (4) the police will tangibly harm Plaintiff. Plaintiff has made

---

[2] Plaintiff seeks judicial notice of statistics, his stated ownership of a dog at issue in this matter, and caselaw. ECF No. 32. Even if the Court were to take judicial notice of those items, it would not change the result of this decision. Plaintiff's request for judicial notice is DENIED as moot.

no showing that he faces immediate harm and injury from the police absent an injunction. Instead, Plaintiff has demonstrated that he may, at some point in the future, have a domestic dispute with his partner that involves the police, and the police may wrongfully identify Plaintiff as the dominant aggressor under Procedure 4.04 and then proceed to seize and search him. The threat of conduct that may be taken by police officers at some point in the future, as presented by Plaintiff, does not provide the Court with the "immediate and irreparable injury, loss, or damage" necessary for issuance of a TRO. FED. R. CIV. P. 65(b)(1)(A).[3]

"[A]ny future threat to [Plaintiff] from the City's policy or from the conduct of police officers would be no more real than the possibility that he would again have an encounter with the police" and that responding officers either apply the written policy, Procedure 4.04, and correctly distinguish the dominant aggressor from the victim, or apply Procedure 4.04 and incorrectly identify Plaintiff as the dominant aggressor, and then cause harm to the Plaintiff (either by wrongfully seizing the Plaintiff or harming his property interests). *See Lyons*, 461 U.S. at 106. Instead of being "immediate," these threats are based on a

---

[3] Plaintiff contends that the written policy and harm he faces are sufficient to demonstrate that an injury is likely to recur for purposes of obtaining injunctive relief. ECF No. 33-1 at 11 (citing to *Truth v. Kent School Dist.*, 542 F.3d 634, 642 (9th Cir. 2008)). In *Truth*, the court found that a school district's written policy prevented the school from granting plaintiff's request to register as a student club due to the school's Establishment Clause concerns, and the court found that there was no likelihood that the school would grant plaintiff's request in the future. *Truth*, 542 F.3d at 642. Unlike the written policy in *Truth*, here the written policy does not, on its face, violate Plaintiff's constitutional rights. The written policy in Procedure 4.04 requires that San Diego police officers distinguish the dominant aggressor from the victim and states "the dominant aggressor is the most significant rather than the first aggressor." ECF No. 33-1 at 2. While Plaintiff contends that Procedure 4.04 is in contravention of state law, there is nothing facially unconstitutional about the policy, and because nothing in the text of the policy precludes police officers from correctly identifying dominant aggressors under Procedure 4.04, the written policy at issue does not provide Plaintiff with the "implicit likelihood" of harm in the immediate future to support injunctive relief. *See Truth*, 542 F.3d at 642 (citation omitted).

series of future events that may or may not happen. *See id.* at 111. Plaintiff's assertion of harm expected in the future is "premised on a speculative sequence of events" that does not meet the imminence or immediacy requirements for issuance of a TRO. *See Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 825-26 (9th Cir. 2020).

### B. Pattern of Official Misconduct

Plaintiff argues there exists a pattern of officially sanctioned misconduct that makes it more likely that he will be harmed by police misconduct if the City of San Diego is not enjoined. ECF No. 33-1 at 12. While Plaintiff states that each officer who responded to the April 16, 2024 incident failed to apply the dominant aggressor procedure under the California Penal Code, Plaintiff does not point to facts establishing that another "encounter with the police" is imminent. *See Lyons*, 461 U.S. at 105-106. Being in a relationship with another person does not create a substantial likelihood that a domestic violence altercation will occur and that police will be called, and it does not provide for the circumstances warranting the extraordinary remedy of an injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (finding that injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

An applicant for injunctive relief in the present context is required to demonstrate that "he, himself, will not only again be stopped by the police" but that police will harm him "without any provocation or legal excuse." *See Lyons*, 461 U.S. at 106 n.7. The applicant may not rely on statistics to demonstrate the imminent harm he faces. *See id.* at 100, 105 (finding Lyon's reliance on statistics of harm related to police conduct insufficient to support the conclusion that he, himself faced a "real and immediate threat."). Plaintiff points to no instances since April 16, 2024 involving himself where police officers were called, failed to engage in the appropriate dominant aggressor analysis, and unreasonably searched or seized him. *Compare Lyons*, 461 U.S. at 108 (finding the "odds" of imminent harm insufficient to support injunctive relief when five months had elapsed between the incident and the filing of the complaint with no further encounters between Lyons and the police) *with Index Newspapers*, 977 F.3d at 826 (finding imminent harm sufficient for

injunctive relief when plaintiffs had provided "powerful evidence" demonstrating federal law enforcement's "ongoing, sustained pattern of conduct that resulted in numerous injuries to [plaintiffs] between the date the complaint was filed and the date the district court entered its preliminary injunction.").

Even if Plaintiff has suffered a harm in the past related to procedures of the San Diego Police Department, Plaintiff must demonstrate imminent harm that he himself faces in order to succeed on the present request for prospective relief. *See Lyons*, 461 U.S. at 111-12 (holding that "[a] federal court…is not the proper forum to press such claims unless the requirements for entry and the prerequisites for injunctive relief are satisfied."). *See also id.* at 107 n.8 (concluding that "emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant" and instead that "emotional upset is a relevant consideration in a damages action.").

### C.  Procedural Injury

Plaintiff also argues that an injury he faces includes "the lack of procedure in San Diego compliant with state law." ECF No. 33-1 at 8.  If a procedural injury "may result in no harm," like by police responding to an altercation and correctly identifying the dominant aggressor under Procedure 4.04, the procedural injury does not constitute "concrete harm," does not rise to the level of irreparable harm, and cannot support an injunction. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016).  Without a showing of particularized harm that Plaintiff will immediately face absent an injunction, Plaintiff is like any other member of the public who is currently in a romantic relationship and therefore lacks standing to obtain injunctive relief for the lack of statutory factors present in Procedure 4.04. *See Lyons*, 461 U.S. at 111-12, *and see Schlesinger v. Reservists to Stop the War*, 418 U.S. 208, 219-221 (1974) (affirming that "[i]t is an established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury

as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public.") (citation omitted).

## CONCLUSION

Because Plaintiff does not demonstrate conduct by the San Diego Police Department that has "persisted for weeks" against him and is "ongoing," Plaintiff has not demonstrated that he faces immediate harm by police officers absent an injunction. *See Index Newspapers*, 977 F.3d at 826. As a result, Plaintiff's request for a TRO is DENIED.

**IT IS SO ORDERED.**

DATED: May 15, 2025

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE