UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON EDWARDS,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 3:24-cv-01118-JAH-SBC<br><br>**ORDER GRANTING DEFENDANTS MINELLA'S AND BLUMBERG'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF No. 23]** |

**INTRODUCTION**

Pending before the Court is Defendant Kathy Minella and Stephanie Blumberg's ("Defendants" or "Attorney Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 23.[1] Plaintiff Cameron Edwards opposes the motion. After a thorough review of the parties' submissions and for the reasons discussed below, the Court **GRANTS** Defendants' Motion to Dismiss with leave to amend.

**BACKGROUND**

On June 27, 2024, Plaintiff Cameron Edwards, a licensed attorney proceeding *pro se*, filed a Complaint against the City of San Diego, numerous San Diego Police

---

[1] City of San Diego, David Nisleit, Matthew Jorge, Joel Chavez, Kameron Chase, Travis Shihadeh also filed a motion to dismiss which is addressed in a separate order. *See* ECF No. 24.

1

Department ("SDPD") Officers, and attorneys Kathy Minella and Stephanie Blumberg under 42 U.S.C. section 1983. The City of San Diego filed a motion to dismiss on August 1, 2024, Attorney Defendants filed a motion to dismiss on November 8, 2024, and the SDPD officers filed a motion to dismiss on November 19, 2024. This Court granted the City of San Diego's motion to dismiss and provided Plaintiff leave to file an amended complaint. On December 27, 2024, Plaintiff filed a First Amended Complaint ("FAC") against the City of San Diego, David Nisleit, Matthew Jorge, Joel Chavez, Kameron Chase, Travis Shihadeh, John Doe, and Attorney Defendants, seeking relief under 42 U.S.C. section 1983, California Civil Code sections 52.1 and 51.7, and California Government Code section 815.6.[2]

Plaintiff alleges his then wife, her attorneys, and SDPD officers participated in a conspiracy to unlawfully enter his home, seize him without justification, and pursue protective orders for retaliatory purposes. Plaintiff specifically alleges Attorney Defendants, who represented Plaintiff's wife in divorce proceedings, conspired with SDPD officers to interfere with Plaintiff's property rights. FAC ¶¶ 32, 33, 37-44, 91, 159. He asserts two causes of actions against Attorney Defendants under section 1983 alleging they participated in a conspiracy to violate Plaintiff's Fourth Amendment rights to be free from unreasonable search and seizure.

On January 13, 2025, Attorney Defendants moved to dismiss the FAC for failure to state a claim. ECF No. 23. Plaintiff filed an opposition and Defendants filed a reply. ECF Nos. 26, 27. Finding the motion suitable for disposition on the briefs, this Court took the matter under submission without oral argument. ECF No. 30.

## LEGAL STANDARD

Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v.*

---

[2] Thereafter, the Court denied Attorney Defendants and SDPD Officers' motions to dismiss the original complaint as moot.

*Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). While *pro se* pleadings are construed liberally, a *pro se* litigant who is also a licensed attorney is not entitled to special solicitude. *See Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023).

///

///

# DISCUSSION

Attorney Defendants seek dismissal of Plaintiff's Complaint arguing they are immune from liability under the Noerr-Pennington doctrine, and Plaintiff fails to state a claim because he fails to establish causation, fails to allege their conduct constituted state action, and fails to sufficiently allege facts to establish a Fourth Amendment violation.

**I. Noerr-Pennington Doctrine**

Attorney Defendants argue their conduct, drafting and filing requests for protective orders and other related court documents on behalf of their client, constitutes protected petitioning activity under the First Amendment and they are, therefore, immune from suit under the Noerr-Pennington Doctrine. They contend Plaintiff fails to plausibly allege the filings were objectively baseless or that they were submitted with the intent to harass, as required to trigger the "sham litigation" exception.

In opposition, Plaintiff argues that the defense is premature at the pleading stage because material facts remain in dispute. He contends that the protective orders were part of a coordinated effort between Defendants and SDPD to violate his constitutional rights, and that the "sham exception" applies because the litigation lacked a legitimate basis and was pursued to facilitate harassment.

The Noerr-Pennington doctrine, rooted in the First Amendment, provides individuals who petition the government immunity from liability for their petitioning conduct. *See BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 524-25 (2002); *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929-30 (9th Cir. 2006). "Though the Noerr-Pennington doctrine first arose in the antitrust context, [the Ninth Circuit] ha[s] extended its application, including to § 1983 claims." *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535 (9th Cir. 2022) (citing *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000)). This protection extends to private actors who file legal pleadings, advocate for judicial relief, or otherwise participate in litigation. *See Sosa* 437 F.3d at 929. A three-step analysis is used to determine whether a defendant is entitled to immunity under the Noerr-Pennington doctrine. *B&G Foods*, 29 F.4th at 535. The court must

determine "(1) whether the lawsuit imposes a burden on petitioning rights; (2) whether the alleged activities constitute protected petitioning activity; and (3) whether the statute at issue may be construed to avoid that burden." *Id*. (citing *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009)). The defendant's conduct is immunized if the answer to each question is yes, unless the "sham litigation" exception applies. *Id*. Applicability of the sham exception is determined at step two of the three step analysis. *Id*.

As an initial matter, Plaintiff argues the motion is premature while the facts are disputed. Because Defendants' motion is brought pursuant to Rule 12(b)(6) which requires the Court to assume the truth of his allegations, there are no disputed facts to prevent the Court from considering the motion.

In the FAC, Plaintiff alleges he obtained a domestic violence restraining order ("DVRO") protecting him from his then wife. FAC ¶ 26-31. He further alleges his wife hired Attorney Defendants to represent her in divorce proceedings and to file a request for a DVRO. *Id*. ¶ 32. Plaintiff asserts her application for the DVRO included falsehoods and misrepresentations regarding their shared dog. *Id*. ¶¶ 33-35. Plaintiff also alleges his wife contacted Attorney Defendants after he informed her of his intent to return to the home which prompted them to contact a SDPD sergeant[3] and report misleading facts about the history of domestic violence between Plaintiff and his then wife, and they agreed that Plaintiff should be excluded from his home based on a claim of abandonment. *Id*. ¶¶ 36-41. Plaintiff asserts he believes Attorney Defendants contacted the sergeant pursuant to a SDPD procedure directing that a sergeant be called when domestic violence incidents involve a victim or suspect who is employed by the City of San Diego.[4] *Id*. ¶ 45. Plaintiff alleges, on the morning of April 16, 2024, he called 911 when he returned to the home. *Id*. ¶ 48. After arriving and contacting Defendant Doe, SDPD officers Jorge and Chavez explained to Plaintiff they would not enforce his DVRO because they believed his wife

---

[3] The sergeant is named as Defendant "John Doe" in the FAC. See FAC ¶ 8.
[4] Plaintiff alleges his wife is employed by the City of San Diego. FAC ¶ 11.

had the right to be in the home but would allow him to enter the home to collect his belongings. *Id*. ¶¶ 49-63. However, once inside the home, Plaintiff refused to leave and repeatedly ask them to take his wife away from the home. *Id*. ¶ 64-66. He alleges the officers became frustrated and after conferring with the sergeant, they were told to use intimidation and threatening language to get Plaintiff to leave the home. *Id*. ¶ 64-72. Plaintiff remained inside and while Defendant Jorge was speaking to his wife at her car as she left the home, Defendant Chavez remained in the home and did not allow Plaintiff to shut the door when he asked to do so. *Id*. ¶¶ 76-80. After both officers left the home, Plaintiff slammed the door and yelled insults at them. *Id*. ¶ 85.

Plaintiff also alleges Attorney Defendants called the sergeant a second time and they agreed on a plan to serve Plaintiff with his wife's DVRO and remove Plaintiff from the home. *Id*. ¶¶ 125-26. He asserts during the late night on April 16, 2024, Defendants Doe, Chase and Shihadeh met with his wife outside the home and concluded Plaintiff was the dominant aggressor without considering the history of abuse alleged in Plaintiff's request for a restraining order. *Id*. ¶¶ 127-130. After Defendant Chase and Shihadeh unsuccessfully attempted to reach him by telephone and ringing his doorbell, they obtained a key from Plaintiff's wife, unlocked and opened the doors despite encountering resistance from weights placed against the door. *Id*. ¶¶ 131-142. Plaintiff was awakened by the loud noise, saw the officers in their uniforms and yelled at them to come back with a warrant. *Id*. ¶¶ 143-45. He further alleges the officers retreated from the door but returned because the Doe sergeant told them to try again. *Id*. ¶ 148. He heard one of them say "we just want to talk," to which he responded with expletives and yelled at them to get away from his house. *Id*. ¶¶ 149-51. Thereafter, the officers left. *Id*. ¶ 151.

**A. Step One – Penalize for Exercising Petitioning Rights**

Under the first prong of the Noerr-Pennington analysis, the Court must determine whether success on Plaintiff's claims would necessarily penalize Defendants for exercising their petition rights. *Kearney*, 590 F.3d at 645. Attorney Defendants contend Plaintiff's claims against them arise entirely out of conduct undertaken as counsel in family law

litigation. As such, they argue, holding them liable would burden their petition rights. Plaintiff does not address this argument.

According to the Plaintiff's allegations, he seeks to hold Attorney Defendants liable for their communications to the SDPD sergeant regarding the DVROs. Attorney Defendants' communications were incidental to the divorce and restraining order proceedings. *See Id*. Plaintiff's theory of liability directly challenges Defendants' efforts to obtain judicial relief in the form of protective orders and seeks to impose civil liability based on the content and consequences of those filings. If successful, Plaintiff's action would prevent Attorney Defendants from participating in the restraining order proceedings and, therefore, would penalize them for exercising their petition rights.

**B. Step Two – Protected Petitioning Activity**

Step two of the Noerr-Pennington analysis requires the Court to determine whether the activities constitute protected petitioning activity. Attempts to seek redress through the judicial system, including filings made in family law and domestic violence proceedings, fall squarely within protected First Amendment petitioning conduct and conduct incidental to the prosecution of legal proceedings is similarly protected. *See Id*.; *Fidelman v. Polis*, 2023 WL 9471992, *14 (S.D. Cal. December 12, 2023) (Determining a petition for a DVRO undisputedly represents a petition to the government.). Additionally, "the Noerr-Pennington doctrine applies to citizen communications with the police." *Forro Precision, Inc. v. Int'l Bus. Machines Corp.*, 673 F.2d 1045, 1060 (9th Cir. 1982).

Plaintiff argues the sham exception applies because his wife's DVRO request was baseless. The Ninth Circuit identified three circumstances in which the sham exception may apply:

> First, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; second, where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; and third, if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.

1  *B&G Foods*, 29 F.4th at 537-38 (citing *Sosa*, 437 F.3d at 938).

2  Here, Plaintiff argues his wife's DVRO request was objectively baseless because her request for sole custody of the dog could only be granted if the court found good cause for granting the request and her asserted cause is refuted by the FAC. He further argues it was objectively baseless for her to believe the court would determine they were mutual aggressors in light of her pattern of abuse versus his self-defense. Additionally, he contends Attorney Defendants facilitation of indirect contact between Plaintiff and his wife violated his DVRO.

In response, Defendants argues none of these assertions are alleged as a basis of his claims against them and his arguments regarding the dog have nothing to do with Attorney Defendants' conduct. They further argue the wife's DVRO was not objectively baseless as a matter of law because she successfully obtained her DVRO. Additionally, they argue the FAC fails to allege any misstatement by Attorney Defendants to the court and Plaintiff makes no argument that any misstatements undermined the legitimacy of the litigation.

Under the first prong, the litigation must be objectively baseless, such that "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Inv., Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993). Only when this threshold is met may a court consider the litigant's subjective intent. *Id*. Because Plaintiff's wife successfully obtained her DVRO, her litigation was not objectively baseless. *Id*. at 60, n.5 ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."). Additionally, Plaintiff does not argue and there are no allegations regarding a series of lawsuits to support a sham litigation under the second prong.

Plaintiff also fails to demonstrate any fraud or misrepresentations by Attorney Defendants to overcome the protection of the Noerr-Pennington doctrine. He alleges the DVRO included "falsehoods and misrepresentations, including a false claim that the parties' shared dog was an emotional support animal." FAC ¶ 33. However, Plaintiff fails to explain how this information regarding the dog deprives the DVRO of its legitimacy. Plaintiff also alleges Attorney Defendants provided untrue and misleading facts about him

and the history of domestic abuse to the SDPD sergeant. *Id*. 38. Again, he fails to explain how this misleading information provided to the sergeant after Plaintiff's wife obtained the DVRO deprived the DVRO of its legitimacy. Additionally, this vague allegation does not meet the heightened pleading standard for allegations of fraud to the court. *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1063 (9th Cir. 1998) (Explaining a heightened pleading standard is employed when determining whether fraud or misrepresentations deprived court proceedings of their legitimacy.). He similarly fails to demonstrate how Attorney Defendants' alleged facilitation of indirect contact between him and his wife deprived the DVRO of its legitimacy.

Therefore, the sham exception is not applicable and does not strip Defendants' petitioning conduct of its protection.

**C. Step Three – Statute Construed to Avoid Burden**

At the third step, the Court considers whether the statute at issue can be construed to avoid burdening protected petitioning conduct. The Ninth Circuit concluded "the Noerr-Pennington doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause." *Sosa*, 437 F.3d at 931. As such, courts must interpret statutes "so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *Id*. The Ninth Circuit has held that section 1983 cannot burden petitioning conduct. *B&G Foods*, 29 F.4th at 540.

Accordingly, Plaintiff's claims against Attorney Defendants are barred under the Noerr-Pennington doctrine as alleged.

**II. Leave to Amend**

In the event the Court grants the motion to dismiss, Plaintiff requests leave to amend. Attorney Defendants argue Plaintiff is unable to state a viable section 1983 claim against them as a matter of law because the claims are barred and request the Court deny leave to amend. They contend amendment is futile because Plaintiff cannot allege facts sufficient to overcome the fatal deficiencies. Additionally, they contend Plaintiff, a licensed attorney,

was informed of the deficiencies in the original complaint and failed to state a viable claim in his amended pleading.

Leave to amend is freely granted "when justice so requires." FED. R. CIV. P. 15(a); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). This matter is at an early stage and the Court finds the claims are barred as alleged. As such, the Court finds it appropriate to provide Plaintiff one final opportunity to amend to set forth allegations that state a claim.

Because the Court will provide Plaintiff one final opportunity to amend, it will address the Attorney Defendants' arguments regarding the sufficiency of the allegations.

## III. Failure to State a Claim

To state a claim under Section 1983, a plaintiff must allege: (1) the deprivation of a right secured by the Constitution and federal laws, and (2) "the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Causation

Attorney Defendants argue Plaintiff fails to allege their conduct proximately caused the alleged violations of his federal rights. They contend Plaintiff's allegations that they gave the SDPD sergeant misleading facts causing the sergeant to determine Plaintiff was the dominant aggressor and that he should be excluded from his home are insufficient because he fails to show they exerted any control over the sergeant or officers' conduct.

In opposition, Plaintiff argues Attorney Defendants had some control over the officers' and his wife. Specifically, he contends the FAC alleges his wife would not have made the decision to stay in the home absent assurances from Attorney Defendants she would not be arrested. Additionally, he contends his former wife would not have met with the officers who unlawfully searched his home without the Attorney Defendants exerting control over her.

10

3:24-cv-01118-JAH-SBC

In reply, Attorney Defendants argue Plaintiff fails to cite to any authority to support his assertion that alleged control over a private person, in this case his wife, is sufficient to establish causation.

Causation is an implicit requirement of a section 1983 action and requires a plaintiff to "establish proximate or legal causation." *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). The plaintiff must show that an individual defendant "[performed] an affirmative act, participate[d] in another's affirmative acts, or omit[ted] to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id*. at 743-44.

According to Plaintiff's allegations, Attorney Defendants violated his rights to be free from unreasonable seizure when his liberty was restrained by SDPD officers "through coercion or a show of authority" when he sat in an isolated place in his home and was unable to close his front door despite wanting to and wanting to access other parts of his home. FAC ¶¶ 87-89. He further alleges Attorney Defendants violated his right to be free from an unreasonable search when SDPD officers attempted to enter his home during the late night of April 16, 2024. *Id*. ¶¶ 125-153. He asserts Attorney Defendants spoke to a SDPD sergeant and provided misleading information regarding the history of domestic violence and agreed to a plan to have Plaintiff's wife meet outside the home so she could reside in the home after Plaintiff was served with her DVRO. *Id*. ¶¶ 37-38, 125-26. There are no facts demonstrating Attorney Defendants directly participated in the alleged violations of his Fourth Amendment rights or had control or power over the officers in their decision to allegedly seize Plaintiff or search his home. *See Arnold*, 637 F.2d at 1356-57; *see also King v. Massarweh*, 782 F.2d 825 (9th Cir. 1986). Additionally, as noted by Defendants, Plaintiff provides no authority for his contention that Attorney Defendants

influence and control over his wife, a private party, demonstrates their control over the officers who prevented him from moving about his house and closing his front door and attempted to enter his home later that night. As alleged, Plaintiff fails to demonstrate causation.

**B. State Action**

Attorney Defendants argue Plaintiff's allegation that they supposedly told the sergeant false information is insufficient to establish state action. They contend Plaintiff fails to sufficiently allege a conspiracy because there are no allegations that the sergeant knew the information purportedly shared by Attorney Defendants was false. They further contend the FAC lacks allegations to establish the alleged conspirators' allegedly shared common objectives of locating the dog, removing Plaintiff from his home, and interfering with his property rights in connection with the parties' competing DVROs would constitute a violation of Plaintiff's constitutional rights.

Plaintiff argues a conspiracy can be inferred because his wife's action of staying in the home was unlikely to be undertaken without an agreement. Specifically, he contends the fact she packed her belongings in her car but remained in the home, supports the inference she intended to leave the home but stayed only as a result of the SDPD officers' agreement not to enforce the DVRO against her, which she learned from Attorney Defendants.

In reply, Defendants argue the FAC lacks any allegations to show an agreement to violate his rights.

Generally, private parties do not act under color of state law. *See Price v. Hawai'i*, 939 F.2d 702, 707-08 (9th Cir. 1991). To hold a private party liable under section 1983, a plaintiff must show the private actor's conduct is "fairly attributable" to the government. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). Plaintiff alleges Attorney Defendants conspired with SDPD officers. In order to plausibly allege a conspiracy claim, "a plaintiff must 'demonstrate the existence of an agreement or meeting of the minds' to violate constitutional rights." *Crowe v. City of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010)

(quoting *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999). The existence of an agreement can be inferred from circumstantial evidence, such as actions by the defendants. *Id*. "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) (citing *Fonda v. Gray*, 707 F.2d 435, 437 (9th Cir.1983)).

At most, Plaintiff's allegations demonstrate an agreement to serve Plaintiff with the DVRO and escort his wife into the home. There are no allegations Attorney Defendants conspired with the state actors to unlawfully seize Plaintiff or search his home. As alleged the FAC does not plausibly show Attorney Defendants were engaged in a conspiracy to violate Plaintiff's rights.

## C. Deprivation of Rights

Attorney Defendants argue Plaintiff fails to allege facts that establish the claimed Fourth Amendment violations for an unreasonable search or seizure. To state a claim under section 1983 for violation of the Fourth Amendment right to be free from unreasonable searches and seizures, a plaintiff must allege sufficient facts to show that a search or seizure occurred and the search or seizure was unreasonable. *See Brower v. County of Inyo*, 489 U.S. 593, 599 (1989).

### 1. Seizure

Attorney Defendants contend Plaintiff's allegations fail to establish a reasonable person would have believed he was not free to leave to support his claim for unlawful seizure. Attorney Defendants maintain the allegations demonstrate Plaintiff refused to leave when the officers encouraged him to obtain his belongings and depart the residence. Because the officers did not engage in any conduct restraining Plaintiff's freedom of movement, Attorney Defendants contend, no seizure occurred. Even if the interaction amounted to a seizure, they argue Plaintiff fails to allege any facts illustrating an unreasonable seizure, such as being put in handcuffs, placed in a squad car, or verbally advised that he was being detained. They contend the allegations demonstrate the officers

conduct was consistent with their function as keepers of the peace and, therefore, if he was seized, it was reasonable.

Plaintiff argues the circumstances surrounding the encounter demonstrate a reasonable person would not have felt free to ignore the police presence or feel free to decline the officers' request or otherwise terminate the encounter. He contends there were two officers, they implied they would use physical force by putting on latex gloves, it was a nonpublic setting, and the officers' authoritative manner implied compliance would be compelled.

Not all encounters with a police officer involve a seizure. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). A seizure occurs when an officer, through physical force or show of authority, restrains one's liberty. *Id*. (quoting *Terry v. Ohio*, 329 U.S. 1, 19, n.16 (1968)). "A seizure by show of authority, such as an order for a suspect to halt, does not constitute a 'seizure' within the meaning of the Fourth Amendment unless and until the arrestee complies with the demand. *Puente v. City of Phoenix*, 123 F.4th 1035, 1051 (9th Cir. 2024) (internal citation and quotation omitted).

The allegations demonstrate Plaintiff was free to leave. Officers attempted to get him to leave. He did not comply. There are no allegations that he was told not to move around his home. However, Plaintiff alleges when he asked to close the door, one officer prevented him from doing so. When a person does not desire to leave, the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter. *Bostick*, 501 U.S. at 436. At this stage of the proceedings, Plaintiff's allegations state a plausible violation of his Fourth Amendment right to be free from unreasonable seizure.

**2. Search**

Attorney Defendants maintain the allegations show the officers opened the front door with the wife's, a co-occupant's, consent. They also contend Plaintiff fails to allege the officers moved further into the home or otherwise continued any purported search after Plaintiff expressed his refusal of consent to their entry of the home. Furthermore, they

argue the officers' brief presence on the porch to request to talk and departure when Plaintiff yelled at them to leave fails to evidence any invasion of a reasonable expectation of privacy, such that no search occurred.

Plaintiff argues his wife's purported consent to a search of the home was ineffective because she had an inferior privacy interest and had no authority to provide consent. Plaintiff further argues the officers' mistaken belief that his wife had authority to consent is a mistake of law which prevents the application of the apparent authority doctrine. He also argues, even if the Court finds his wife had authority to consent, her consent was no longer valid after he expressly refused entry.

In reply, Attorney Defendants maintain the facts demonstrate that prior to attempting to open the door, the officers attempted to contact Plaintiff by phone and by ringing the doorbell, and after observing a doormat reading "come back with a warrant" and weights leaned against the inside of the door. They argue the allegations, at best, show an implicit refusal to consent to allow the officers to search the residence. Because the refusal must be express, not implicit, to override the wife's consent, Defendants contend Plaintiff did not expressly object to the officers opening the door until he yelled at them to come back with a warrant. They further argue the knock-and talk exception to the warrant requirement "permits law enforcement officers to encroach upon the curtilage of a home for the purpose of asking questions of the occupants." Reply at 10-11 (citing *United States v. Lundin*, 817 F.3d 1151 (9th Cir. 2016). They maintain the FAC lacks any allegations suggesting the officers' presence on the porch requesting to speak with Plaintiff was inconsistent with an attempt to initiate consensual contact with Plaintiff.

"A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Plaintiff clearly had a reasonable expectation of privacy in his home. *See Silverman v. United States*, 365 U.S. 505, 511 (1961). ("At the very core [of the Fourth Amendment], stands the right of a man to retreat into his own home and be free from unreasonable governmental intrusion.").

Defendants, argue Plaintiff's wife, a co-occupant, provided consent. Officers may search a jointly occupied home if one of the occupants consents to the search. *Fernandez v. California*, 571 U.S. 292, 294 (2014). However, if another occupant is physically present and objects to the search, the search is unreasonable as to him. *Georgia v Randolph*, 547 U.S. 103 (2006). Plaintiff argues his wife did not have apparent authority to consent to a search and, even if she did, her consent was invalidated by his express objections.

According to Plaintiff's allegation, the officers, Defendants Chase and Shihadeh, who arrived at the home to serve him with his wife's DVRO, were aware Plaintiff also had a DVRO but concluded he was the dominant aggressor. FAC ¶¶ 127-129. He further alleges the officers attempted to contact him via telephone and by ringing his doorbell but he did not respond to either. *Id*. ¶¶ 131, 132, 133, 137. The officers obtained a key from Plaintiff's wife and attempted to open the door and because they encountered resistance, they used force to attempt to open the door completely. *Id*. ¶¶ 137-142. Plaintiff, from inside the house, yelled, "no, come back with a warrant!" *Id*. ¶ 145. He alleges the officers walked away from the porch but returned saying they just wanted to talk and left when he yelled at them to "[g]et the fuck away from my house!" *Id*. ¶ 149.

Plaintiff relies on *United States v. Schram*, 901 F.3d 1042 (9th Cir. 2018) to support his argument that his wife had an inferior expectation of privacy. *Schram* does not address the issue of consent by one subject to a restraining order. Rather, the Ninth Circuit held, in *Schram*, that an individual whose presence at the home in violation of a no-contact order has no expectation of privacy in that property and may not challenge its search on Fourth Amendment grounds. 901 F.3d at 1046. The court specifically stated it was addressing whether the Fourth Amendment right of the person claiming a constitutional violation was infringed. *Id*. at 1044. Here, it is not Plaintiff's wife's privacy expectation in the home, but rather Plaintiff's privacy expectation, that is alleged to have been violated. Plaintiff provides no authority for his contention that the competing DVROs deprived his wife of the authority to provide consent. Therefore, the officers had consent from someone with

apparent authority to search the home when they attempted to open the door with Plaintiff's wife's key.

Prior to attempting to open the door with Plaintiff's wife's consent, the officers attempted to contact Plaintiff by ringing the doorbell and calling him and they received no response. When Plaintiff yelled at them to get a warrant, thereby explicitly objecting to the search, the officers retreated. Accordingly, as alleged Plaintiff fails to establish an unreasonable search based on the officer's attempt to open the door after unlocking it with Plaintiff's wife's key.

However, the officers returned after Plaintiff yelled at them to get a warrant and knocked on his door, saying they wanted to talk. The curtilage of a home, including a porch or front door area, are treated as part of the home for Fourth Amendment purposes. *Lundin*, 817 F.3d at 1158 (9th Cir. 2016) (citing *Oliver v. United States*, 466 U.S. 170, 180 (1984). Defendants argue the officer's conduct of knocking on the door after Plaintiff told them to come back with a warrant was consistent with an attempt to initiate consensual contact which is permissible under the "knock and talk" exception to the warrant requirement. Pursuant to the "knock and talk" exception, law enforcement officers can "encroach upon the curtilage of a home for the purpose of asking questions of the occupants." *United States v. Perea-Rey*, 680 F.3d 1179, 1187 (9th Cir. 2012). The exception is based on the implied consent "from the custom of treating the 'knocker on the front door" as an invitation (i.e., license) to approach the home and knock." *Lundin*, 817 F.3d at 1158 (citing *Florida v. Jardines*, 569 U.S. 1, 8 (2013)).

> Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's "castle" with the honest intent of asking questions of the occupant there of whether the questioner be a pollster, a salesman, or an officer of the law.

*United States v. Cormier*, 220 F.3d 1103, 1109 (9th Cir. 2000) (quoting *Davis v. United States*, 327 F.2d 301, 303 (9th Cir 1964)). The exception is limited to the purpose of asking the occupants questions. *Perea-Rey*, 680 F.3d at 1187.

Any implied consent to knock on his door was revoked when Plaintiff yelled at the officers to get a warrant, and the alleged Fourth Amendment intrusion did not occur at or near "high noon" or at a time "unexpected visitors are customarily expected to knock on the front door of a home". *Cormier*, 220 F.3d at 1109; *Lundin*, 817 F.3d at 1159. Accordingly, Plaintiff sufficiently alleges an unreasonable search.

## CONCLUSION AND ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1. Attorney Defendants Kathy Minella and Stephanie Blumberg's Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 23) is **GRANTED**;

2. Plaintiff's First and Seventh Causes of Action against Defendant Minella and Blumberg are **DISMISSED without prejudice**.

3. Plaintiff may file a Second Amended Complaint **no later than October 10, 2025**.

DATED:   September 10, 2025

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE