1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10
                                              Case No.: 24-cv-01118-JAH-BJC
11
CAMERON EDWARDS,                              **ORDER GRANTING IN PART AND**
12                                            **DENYING IN PART DEFENDANTS'**
                                Plaintiff,    **MOTION TO DISMISS**
13
v.
14                                            **[ECF No. 24]**
CITY OF SAN DIEGO, et. al.
15
                                Defendants.
16
17
18                         **INTRODUCTION**
19        Pending before the Court is Defendants David Nisleit, Matthew A. Jorge, Joel J.
20  Chavez, Travis J. Shihadeh, Kamran J. Chase, and the City of San Diego's (collectively,
21  "Defendants") Motion to Dismiss.  ECF No. 24 ("Motion").[1]  Plaintiff Cameron Edwards
22  ("Plaintiff"), proceeding *pro se*, opposes the motion.   ECF No. 26 ("Opposition").  After
23  a thorough review of the parties' submissions and for the reasons discussed below,
24  Defendants' Motion is GRANTED in part and DENIED in part.
25  ///
26
27
28
[1] Defendants Kathy Minella and Stephanie Blumberg filed a separate Motion to Dismiss Plaintiff's First
Amended Complaint that is addressed in a separate order.  *See* ECF No. 23.

**PROCEDURAL HISTORY**

On June 17, 2024, Plaintiff, proceeding *pro se*, filed a Complaint against the City of San Diego, in addition to nine current and former San Diego Police Department ("SDPD") employees and two lawyers representing Plaintiff's then wife, alleging various civil rights violations pursuant to 42 U.S.C. Section 1983.[2]  ECF No. 1 at 3-4.  On August 1, 2024, Defendant City of San Diego filed a Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 8 and 12.  *See* ECF No. 3.  On December 6, 2024, the Court granted the Motion to Dismiss without prejudice and provided Plaintiff leave to amend. *See* ECF No. 16.

On December 27, 2024, Plaintiff filed the operative First Amended Complaint ("FAC") against the City of San Diego, David Nisleit, Matthew Jorge, Joel Chavez, Kameron Chase, Travis Shihadeh, John Doe, Kathy Minella and Stephanie Blumberg, asserting claims pursuant to 42 U.S.C. Section 1983, California Civil Code Section 52.1 ("Bane Act"), California Civil Code Section 51.7 ("Ralph Act"), California Government Code Section 815.6, and common law negligence.  ECF No. 19.  Thereafter, Defendants filed the instant motion.  Plaintiff filed a response in opposition and Defendants filed a reply.  Deeming the motion suitable for disposition without oral argument, the Court took the matter under submission.

**BACKGROUND**

Plaintiff alleges a history of domestic abuse towards Plaintiff by his then wife, including physical assault, stalking and unwanted communications.  FAC ¶¶ 15-16.  On April 15, 2024, Plaintiff sought and obtained a Domestic Violence Temporary Restraining Order ("DVRO") against his wife.  *Id*. ¶ 26.  Plaintiff informed his wife he intended to return to their home the following morning, April 16, 2024, and he would call the police if

---

[2]  Plaintiff is a licensed attorney in California.  *See* ECF No. 19, ¶ 116.  As a licensed attorney, he is not due the liberal pleading standard typically afforded to *pro se* litigants.  *See Huffman v. Lindgren*, 81 F.4th 1016, 1020-21 (9th Cir. 2023).

she was still in the house in violation of the DVRO. *Id*. ¶ 36. On April 16, Plaintiff called the police upon arrival at the house. *Id*. ¶ 48. Defendants Jorge and Chavez responded to the call. *Id*. ¶ 50. After a discussion, Defendants Jorge and Chavez informed Plaintiff they would not enforce the terms of the DVRO, and they would only allow Plaintiff to briefly enter the home to gather a few belongings. *Id*. ¶ 58. After further discussion, Defendant Jorge agreed to serve Plaintiff's wife with the DVRO and to allow Plaintiff to enter the home to retrieve his belongings. *Id*. ¶¶ 62-63. Once inside, Plaintiff refused to leave the house. *Id*. ¶ 65. Plaintiff alleges Defendants Jorge and Chavez spoke with a Domestic Violence Sergeant[3] who suggested they intimidate Plaintiff and use threatening language. *Id*. ¶ 68. After Plaintiff's continued refusal to leave the house, Defendant Jorge escorted Plaintiff's wife from the home while Defendant Chavez remained in the house with Plaintiff. *Id*. ¶¶ 76-79. The Defendant officers exited the house after Plaintiff's wife drove away, and Plaintiff yelled insults at them as he slammed the front door closed. *Id*. ¶¶ 82-85.

Plaintiff also alleges Plaintiff's wife obtained a DVRO against Plaintiff on April 16, 2024. *Id*. ¶ 40. At 11:30 p.m. on April 16, 2024, Plaintiff alleges Defendants John Doe, Shihadeh, and Chase arrived outside Plaintiff's home to meet with Plaintiff's wife and serve Plaintiff with the DVRO. *Id*. ¶¶ 127. Defendants Chase and Shihadeh tried to contact Plaintiff via telephone, but Plaintiff did not answer. *Id*. ¶¶ 131-32. They then approached the front door of the house, which Plaintiff asserts had a doormat that read "COME BACK WITH A WARRANT" and had visible weights and scrap metal obstructing the front door. *Id*. ¶¶ 134-35. After Plaintiff did not answer the door, Defendants Chase and Shihadeh retrieved the house keys from Plaintiff's wife and attempted to forcibly open the door by pushing the weights and scrap metal out of the way. *Id*. ¶¶ 137, 143. The sound of the weights and scrap metal moving at the front door woke Plaintiff up. *Id*. ¶ 143. Plaintiff

---

[3] The Domestic Violence sergeant is named as Defendant "John Doe" in the FAC. *See* FAC ¶ 8.

came downstairs, saw Defendants Chase and Shihadeh at the door, and yelled "No, come back with a warrant!"  *Id*. ¶ 145.  Defendants Chase and Shihadeh retreated but returned saying "we just want to talk" to which Plaintiff responded with expletives and yelled to get away from his door.  *Id*. ¶¶ 149-51.  Thereafter, the officers left.  *Id*. ¶ 151.

Plaintiff alleges he suffered emotional distress causing him anxiety, depression, and post-traumatic stress disorder.  *Id*. ¶¶ 175-76.  As a result, Plaintiff claims lost wages and medical expenses.  *Id*. ¶ 179.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  In other words, "the non-conclusory 'factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Twombly*, 550 U.S. at 477).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party.  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).  However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).  While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level".  *Twombly*, 550 U.S. at 545.

When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint and documents attached to the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). If the court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the deficiencies could not possibly be cured. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

### DISCUSSION

Defendants argue the FAC should be dismissed with prejudice because (1) it fails to state a claim pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978), (2) it fails to state a valid claim under Section 1983, (3) the officer defendants are entitled to qualified immunity as to the section 1983 claims, (4) the FAC fails to plead sufficient facts to establish a Bane Act violation, (5) the FAC fails to state a claim for violation of the Ralph Act, (6) the FAC fails to state a claim for violation of Section 815.6 and Plaintiff fails to set forth any factual allegations against Defendant Nisleit, (7) Plaintiff fails to state a claim for negligence, (8) the FAC fails to allege facts sufficient to warrant punitive damages and (9) the allegations do not support declaratory relief.

### I.    *Monell* Claim

Defendants argue Plaintiff's allegations in support of his *Monell* claim are speculative and conclusory and they do not amount to deliberate indifference. Plaintiff argues Procedure 4.04 omits the dominant aggressor procedure mandated by California Penal code Section 13701(b) and 836(c) and, therefore, it denies individuals due process. He further argues he need not demonstrate deliberate indifference because the policy is unconstitutional, "in and of itself." Pla's Opp. at 13.

A municipality cannot be held vicariously liable for the acts of its employees under Section 1983. *Monell*, 436 U.S. at 691. Rather, to properly plead a Section 1983 claim against a governmental entity or its agents, known as a "*Monell* claim," a "plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the

constitutional violation.'" *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)); *see also Monell*, 436 U.S. at 690-91.

A policy amounts to "deliberate indifference" when the need for more or different action "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 389. "[A] claim of municipal liability under Section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002) (quoting *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988)).

In the FAC, Plaintiff alleges that the City's written policy, Procedure 4.04(F)(2)(b)(5), "is unconstitutional as applied to Plaintiff because it denied Plaintiff his right to due process of law under the Fourteenth Amendment." FAC ¶ 167. Plaintiff asserts that Procedure 4.04 "is procedurally inadequate by failing to account for how a pattern of domestic violence helps police officers identify the dominant aggressor." *Id*. ¶ 170. Plaintiff further states that the individual officer defendants "acted pursuant to an expressly adopted official policy that includes a procedure for determining the dominant aggressor that is in conflict with state law." *Id*. ¶ 173. According to Plaintiff, Procedure 4.04 fails to include the four factors prescribed by California Penal Code Section 13701(b) to determine the dominant aggressor. *Id.* ¶ 168-69. Pursuant to Section 13701(b),

> In identifying the dominant aggressor, an officer shall consider the intent of the law to protect victims of domestic violence from continuing abuse, the threats creating fear of physical injury, the history of domestic violence between the persons involved, and whether either person acted in self-defense.

Viewed in the light most favorable to Plaintiff, Procedure 4.04's absence of these factors for determining a dominant aggressor in domestic abuse situations authorizes law

24-cv-01118-JAH-BJC

enforcement to label an individual a dominant aggressor and deprive them of their right to enjoy the home without proper procedural safeguards. Plaintiff's allegations satisfy the pleading standard alleging Section 1983 liability against a municipality. *See Galbraith*, 307 F.3d at 1127. Accordingly, Defendants' Motion to Dismiss Plaintiff's Ninth Claim is DENIED.

## II.    42 U.S.C. Section 1983 Claims as to Individual Defendants

Plaintiff brings four separate causes of action under 42 U.S.C. Section 1983 against the individual law enforcement officers. However, Plaintiff voluntarily dismisses his Third Claim for violation of his Fourteenth Amendment due process rights based on a state created danger. *See* Opposition at 1. Accordingly, the Court will address the first, second and seventh causes of action which assert claims under Section 1983.

To maintain an action under Section 1983, a plaintiff must plead (1) that the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Evans v. McKay*, 869 F.2d 1341, 1347 (1989).

### A. First and Second Claims

Plaintiff's First and Second Claims allege Defendants Doe, Jorge and Chavez, unreasonably seized Plaintiff's person and searched his home by entering without permission in violation of the Fourth Amendment on the morning of April 16, 2024. FAC ¶¶ 87-98. Defendants argue Plaintiff's First and Second Claims should be dismissed because they are conclusory. They further argue Plaintiff consented to the officers entering the home to serve the DVRO. In opposition, Plaintiff argues the circumstances surrounding the encounter demonstrate a reasonable person would not have felt free to ignore the police presence or feel free to decline the officers' request or otherwise terminate the encounter. He contends the officers implied they would use physical force when they put on latex gloves and the nonpublic setting and authoritative manner implied compliance would be compelled. He argues that he alleges he complied by sitting in an isolated area in the home

and not seeking to access other parts of the home and he was prevented from closing his front door.

The Fourth Amendment explicitly protects the right of people to be secure in their homes against unreasonable searches and seizures. U.S. Const. amend. IV, § 1. "[W]hen it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 569 U.S. 1, 6 (2013); *see also United States v. U.S. Dist. Ct. for E. Dist. of Mich.,* 407 U.S. 297, 313 (1972) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. . .").  The Fourth Amendment imposes on law enforcement the requirement of obtaining a warrant before entering a home, subject to certain exceptions, such as emergency, exigency, or consent. *Lange v. California*, 594 U.S. 295, 301 (2021).

Not all encounters with a police officer involve a seizure. *Florida v. Bostick*, 501 U.S. 429, 434 (1991).  A seizure occurs when an officer, through physical force or show of authority, restrains one's liberty. *Id.* (quoting *Terry v. Ohio*, 39 U.S. 1, 19, N.16 (1968)). "A seizure by show of authority, such as an order for a suspect to halt, does not constitute a 'seizure' within the meaning of the Fourth Amendment unless and until the arrestee complies with the demand." *Puente v. City of Phoenix*, 123 F.4th 1035, 1051 (9th Cir. 2024) (internal quotations and citation omitted).

In the FAC, Plaintiff alleges Defendants Jorge and Chavez, when responding to Plaintiff's call for service, were dressed in uniform "typical of on-duty SDPD officers" and they carried firearms. *Id.* ¶ 50.  After some initial hesitation, Defendants Jorge and Chavez served Plaintiff's wife with the DVRO. *Id.* ¶ 63.  Plaintiff then asked the Defendants if he could enter the home to retrieve his belongings, and the officers responded that he could do so briefly. *Id.* ¶¶ 60, 63.  Defendants Jorge and Chavez followed Plaintiff inside the home as he entered. *Id.* ¶ 64.  Once he was inside the home, Plaintiff refused to leave. *Id.* ¶ 65.  Officers attempted to get him to leave. *Id.* ¶¶ 70-72.  Plaintiff did not comply. Plaintiff maintains he "submitted" to Defendants by sitting in one place in his house and not closing his front door. *Id.* ¶¶ 88-89.

There is no mention in the FAC that the officers requested permission to follow Plaintiff inside, nor did Plaintiff tell them to remain outside.  Because Defendants Jorge and Chavez entered the home absent a specific request for permission to enter, they did not have Plaintiff's consent to enter.  *United States v. Shaibu*, 920 F.2d 1423, 1428 (9th Cir. 1990) ("[I]n the absence of a specific request by police for permission to enter a home, a defendant's failure to object to such entry is not sufficient to establish free and voluntary consent.").  There are no allegations that Plaintiff was told not to move around his home.  However, Plaintiff alleges when he asked to close the door, Defendant Chavez prevented him from doing so.  *Id.* ¶¶ 79-80.  When a person does not desire to leave, the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.  *Bostick*, 501 U.S. at 436.

At this stage of the proceedings, Plaintiff plausibly alleges a violation of his Fourth Amendment right to be free from unreasonable search and unreasonable seizure.  Accordingly, Defendants' Motion to Dismiss Plaintiff's First and Second Claims for failure to state a claim is DENIED.

**B. Plaintiff's Seventh Claim**

Plaintiff's Seventh Claim alleges Defendants Chase, Shihadeh, and Doe violated Plaintiff's Fourth Amendment rights by conducting a warrantless search of his home at approximately 11:30 p.m. on April 16, 2024.  FAC ¶¶ 127, 154-55.  Defendants argue the claim is supported solely by conclusory statements, and that the Defendants had Plaintiff's wife's consent to enter the home.  In his Opposition, Plaintiff asserts that his wife was in violation of her DVRO at the relevant times, and therefore she did not have a legitimate expectation of privacy in the home.  Plaintiff also asserts that his objection to Defendants' search made his wife's consent ineffective.

In the FAC, Plaintiff alleges that Defendants Chase and Shihadeh were at Plaintiff's house the evening of April 16, 2024 "to attempt to serve Plaintiff with a restraining order as John Doe supervised the operation as required by SDPD Procedure 4.04."  FAC ¶ 127.  He further alleges the officers attempted to contact him via telephone and by ringing his

doorbell, but he did not respond to either. *Id*. ¶¶ 131-33, 137. After obtaining a key from Plaintiff's wife, the officers attempted to open the door and because they encountered resistance, they used force to attempt to open the door completely. *Id*. ¶¶ 137-42. Plaintiff, from inside the house, yelled, "no, come back with a warrant!" *Id*. ¶ 145. He alleges the officers walked away from the porch but returned saying they just wanted to talk and left when he yelled at them to "[g]et the fuck away from my house!" *Id*. ¶ 149.

Prior to attempting to open the door with Plaintiff's wife's consent, the officers attempted to contact Plaintiff by ringing the doorbell and calling him, and they received no response. When Plaintiff yelled at them to get a warrant, thereby explicitly objecting to the search, the officers retreated. Accordingly, as alleged, Plaintiff fails to establish an unreasonable intrusion based on the officers' attempt to open the door after unlocking it with Plaintiff's wife's key.

Officers may search a jointly occupied home if one of the occupants consents to the search. *Fernandez v. California*, 571 U.S. 292, 294 (2014). However, if another occupant is physically present and objects to the search, the search is unreasonable as to him. *Georgia v Randolph*, 547 U.S. 103 (2006). Relying on *United States v. Schram*, 901 F.3d 1042 (9th Cir. 2018), Plaintiff argues his wife did not have apparent authority to consent to a search and, even if she did, her consent was invalidated by his express objections. *Schram* does not address the issue of consent by one subject to a restraining order. Rather, the Ninth Circuit held, in *Schram*, that an individual whose presence at the home in violation of a no-contact order has no expectation of privacy in that property and may not challenge its search on Fourth Amendment grounds. 901 F.3d at 1046. The court specifically stated it was addressing whether the Fourth Amendment right of the person claiming a constitutional violation was infringed. *Id*. at 1044. Here, it is not Plaintiff's wife's privacy expectation in the home, but rather Plaintiff's privacy expectation, that is alleged to have been violated. Plaintiff provides no authority for his contention that the competing DVROs deprived his wife of the authority to provide consent. Therefore, the

24-cv-01118-JAH-BJC

officers had consent from someone with apparent authority to search the home when they attempted to open the door with Plaintiff's wife's key.

However, the officers returned after Plaintiff yelled at them to get a warrant and knocked on his door, saying they wanted to talk. The curtilage of a home, including a porch or front door area, are treated as part of the home for Fourth Amendment purposes. *United States v. Lundin*, 817 F.3d 1151, 1158 (9th Cir. 2016) (citing *Oliver v. United States*, 466 U.S. 170, 180 (1984). Pursuant to the "knock and talk" exception, law enforcement officers can "encroach upon the curtilage of a home for the purpose of asking questions of the occupants." *United States v. Perea-Rey*, 680 F.3d 1179, 1187 (9th Cir. 2012). The exception is based on the implied consent "from the custom of treating the 'knocker on the front door" as an invitation (i.e., license) to approach the home and knock." *Lundin*, 817 F.3d at 1158 (citing *Florida v. Jardines*, 569 U.S. 1, 8 (2013)).

> Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's "castle" with the honest intent of asking questions of the occupant there of whether the questioner be a pollster, a salesman, or an officer of the law.

*United States v. Cormier*, 220 F.3d 1103, 1109 (9th Cir. 2000) (quoting *Davis v. United States*, 327 F.2d 301, 303 (9th Cir 1964)). The exception is limited to the purpose of asking the occupants questions. *Perea-Rey*, 680 F.3d at 1187.

Any implied consent to knock on his door was revoked when Plaintiff yelled at the officers to get a warrant, and the alleged Fourth Amendment intrusion did not occur at or near "high noon" or at a time "unexpected visitors are customarily expected to knock on the front door of a home". *Cormier*, 220 F.3d at 1103; *Lundin*, 817 F.3d at 1159. Accordingly, Defendants' Motion to Dismiss Plaintiff's Seventh Claim for failure to state a claim is DENIED.

///

///

### III. Qualified Immunity

Defendants argue the individual law enforcement officers are entitled to qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is meant to ensure officers are on notice their conduct is unlawful before they can be held liable. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002). When determining whether an officer is entitled to qualified immunity a court must decide (1) whether the plaintiff has alleged the deprivation of a constitutional right; and (2) whether that right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 232-37 (2009). The absence of either element warrants a finding that immunity exists. *See Shafer v. Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017).

The second element turns on "the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "Clearly established" means the law existing at the time of the alleged violation "placed the constitutionality of the officer's conduct 'beyond debate.'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Therefore, to demonstrate the right is "clearly established," the court must find a controlling case that "squarely governs the specific facts at issue," unless the officer's conduct clearly violates a general legal principle despite a lack of precedent. *West v. City of Caldwell*, 931 F.3d 978, 983 (9th Cir. 2019) (quoting *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019)). "Plaintiffs bear the burden of proving that a constitutional right 'was clearly established at the time of the incident.'" *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1151 (9th Cir. 2021) (citation omitted).

### A. Plaintiff's First and Second Claims

Defendants argue Jorge and Chavez are entitled to qualified immunity because Plaintiff fails to prove the existence of a clearly established right that was violated. In his

Opposition, Plaintiff cites to *United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009), which describes five factors that aid in determining whether a person's liberty has been restrained.

As discussed above in section II.A., Plaintiff sufficiently alleges a violation of his right to be free from an unreasonable search and his right to be free from an unreasonable seizure. Plaintiff relies on California Family Code Section 6301(c), *California v. Hodari*, 499 U.S. 621 (1991) and *United States v. Mendenhall*, 446 U.S. 544 (1980) in support of his contention his right to be free of unreasonable seizure was clearly established. Pursuant to California Family Code Section 6301, an individual who vacates his or her home to avoid abuse cannot be denied the right to petition for protective orders. Plaintiff points to the reasoning in *Hodari* that a seizure occurs, when "a reasonable person would have believed that he was not free to leave" and argues the circumstances surrounding his encounter with Defendants Jorge and Chavez amounted to a seizure. *Hodari*, 499 U.S. at 627. Plaintiff specifically relies on *Mendenhall* for its explanation of "examples of circumstances that might indicate a seizure", including the "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice." *Mendenhall*, 446 U.S. 544, 554 (1980).

Plaintiff does not explain how the California statute permitting an individual the right to petition for protective orders even when they vacated their home demonstrates a reasonable officer would have known his conduct violated Plaintiff's constitutional right to be free from unreasonable seizure under the circumstances. The officers' conduct did not prevent him for petitioning for a protective order. Even if the officers' failure to enforce his protective order by refusing to make his wife vacate the home violated the statute, violation of the statute does not give rise to his claim of an unreasonable seizure. *See Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012); *Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 929 (9th Cir. 2001) (The "focus is on whether a reasonable officer would have known that the deputies' conduct violated [ ] federal statutory or constitutional rights rather than merely a state law or policy provision.").

1    Plaintiff's reliance on *Hodari* and *Mendenhall*, is similarly misplaced.  *Hodari*

2   involved a group of youths huddled around a car that fled when they saw officers

3   approaching them and, while running, the defendant discarded crack cocaine before being

4   tackled and handcuffed by one of the officers.  499 U.S. at 623-24.  The defendant moved

5   to suppress the evidence of the crack cocaine arguing he was seized by the officer when he

6   saw the officer running towards him.  *Id*.  The Court reasoned that the objective test in

7   *Mendhenhall*, that an officer's words and actions must convey to a reasonable person that

8   he or she was not free to leave, is a necessary condition but does not mean there is always

9   a seizure whenever a reasonable person would have believed they were not able to leave.

10  *Id*. at 628.  The Court ultimately found there is no seizure through a show of authority if

11  the individual does not yield.  *Id*. at 626.

12    In *Mendenhall*, the Court determined no seizure occurred when the two DEA agents

13  approached the defendant at the airport when she disembarked from a plane and identified

14  themselves as federal agents.  446 U.S. 544.  The Court looked to the circumstances of the

15  encounter, including that the events took place in a public area, the agents did not wear

16  uniforms and displayed no weapons, they requested but did not demand her identification

17  and asked only a few questions.  *Id*. at 555.

18    Plaintiff's authorities do not define the "contours" of his right to be free from

19  unreasonable seizure with the necessary specificity.  *Shooter v. Arizona*, 4 F.4th 955, 961

20  (9th Cir. 2021).  Plaintiff fails to demonstrate the constitutionality of the officers' conduct

21  is beyond debate as required.  Accordingly, Defendants are entitled to qualified immunity

22  as to Plaintiff's First Claim.

23    However, the right to be free from unreasonable search was clearly established at

24  the time of the incident giving rise to Plaintiff's Second Claim.  In *Shaibu*, the defendant

25  walked into the defendant's apartment and left the door wide open.  920 F.2d 1423, 1424

26  (9th Cir. 1990).  Law enforcement officers then followed the defendant inside.  *Id*.  The

27  officers did not ask for permission to enter, and the defendant said nothing to indicate

28  consent or deny permission.  *Id*.  The Ninth Circuit held the entry violated the Fourth

Amendment, explaining "in the absence of a specific request by police for permission to enter a home, a defendant's failure to object to such entry is not sufficient to establish free and voluntary consent." *Id.* at 1428.

Similarly, Defendants Jorge and Chavez entered the home absent a specific request for permission to enter, and therefore, did not have Plaintiff's consent to enter. In light of *Shaibu*, the Court finds no reasonable officer could have believed the warrantless entry to be lawful. Therefore, the Court finds Plaintiff sufficiently alleges the warrantless entry of Plaintiff's home by Defendants Jorge and Chavez violated a "clearly established" right to support his Second Claim. *See Shaibu*, 920 F.2d at 1428.

**B. Plaintiff's Seventh Claim**

Defendants argue Chase and Shihadeh had consent to enter the home from Plaintiff's wife, who allegedly gave Defendants her housekeys. In his Opposition, Plaintiff asserts that his wife was in violation of her DVRO at the relevant times and, therefore, she did not have a legitimate expectation of privacy. Plaintiff also asserts that his objection to Defendants' search made ineffective any implied consent Plaintiff's wife may have given to Defendants.

As discussed in section II.B., Plaintiff's allegations show a Fourth Amendment violation when the officers returned to the porch and door area after being told to come back with a warrant. Plaintiff relies on *Bonivert v. City of Clarkston*, 883 F.3d 865 (9th Cir. 2018), *Georgia v. Randolph*, 547 U.S. 103 (2006), and *United States v. Parkins*, 92 F.4th 882 (9th Cir. 2024) in support of his contention that the constitutional right was clearly established.

The Court finds *Bonivert* and *Randolph* support that a reasonable officer would know that his warrantless entry onto the property of one expressly refusing them entry despite having received the consent from an occupant would violate the objecting party's Fourth Amendment right to be free from unreasonable search. *See Bonivert*, 883 F.3d at 876 (Finding the co-occupant's consent was no longer valid when the defendant expressly refused entry by putting on the deadbolt and attempting to slam the door on the officers);

*Randolph*, 547 U.S. at 106 ("[A] physically present co-occupant's stated refusal to permit entry prevails, rendering the warrantless search unreasonable and invalid as to him."). Similarly, here, Plaintiff yelled "no, come back with a warrant" when he heard officers trying to get into the home, clearly indicating his express refusal to allow them entry to his home and its curtilage.   Therefore, Plaintiff demonstrates a violation of a "clearly established" right, and Defendants are not entitled to qualified immunity as to the Seventh Claim.

## IV. Plaintiff's Fourth Claim: Bane Act

Defendants argue Plaintiff's Bane Act claim relies on conclusory allegations and Plaintiff fails to properly plead the specific intent of Defendants Jorge and Chavez to violate Plaintiff's constitutional right to enjoy possessory property rights.  Motion at 13.

The Bane Act provides a private cause of action for "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of [California], has been interfered with, or attempted to be interfered with through the use of "threat, intimidation, or coercion."  Cal. Civ. Code § 52.1(b).  "[P]roving a Bane Act claim," however, "requires specific intent to violate protected rights." *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 519 (9th Cir. 2018).  The Ninth Circuit has elaborated on this analysis as follows:

> The specific intent inquiry for a Bane Act claim is focused on two questions: First, "[i]s the right at issue clearly delineated and plainly applicable under the circumstances of the case," and second, "[d]id the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?" So long as those two requirements are met, specific intent can be shown "even if the defendant did not in fact recognize the unlawfulness of his act" but instead acted in "reckless disregard" of the constitutional right.

*Id*. (citations omitted). The first question is resolved if it is legally clear, under the circumstances of the case, that the defendants violated a clearly delineated right. *Id*. With respect to the second question, "a reckless disregard for a person's constitutional rights is

evidence of a specific intent to deprive that person of those rights." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018).

Plaintiff asserts a violation of the Bane Act against the City of San Diego and Defendants Jorge, Chavez, and Doe.  Plaintiff's Bane Act claim pertains to the alleged intimidation and coercion by Defendants Jorge and Chavez while at Plaintiff's residence the morning of April 16, 2024.  FAC ¶¶ 107-115.  Plaintiff alleges Defendants Jorge and Chavez violated "his property rights" and his "right to refuse orders from a police officer".  *Id*. ¶ 107.  Further, Plaintiff alleges he had a right to be in his home under Family Code Section 6301(b), which explains, in pertinent part, that protective orders may be granted to victims of domestic abuse.  *See* Cal. Fam Code § 6301(b).  Plaintiff relies on Defendant Jorge's alleged statement, "I'm not going to argue about it anymore[,]" as well as his act of putting on latex gloves and being armed with a firearm at the time, as a basis for intimidation and coercion.  FAC ¶ 109.  In addition, Plaintiff asserts the presence of another armed officer, Defendant Chavez, added to this alleged intimidation and coercion.  *Id*. ¶¶ 109-110.  He also alleges Defendant Jorge asserted Plaintiff had no right to be in his home. *Id*. ¶ 108.  Plaintiff alleges the above actions of Defendants Jorge and Chavez derived from a conversation with Defendant Doe, who allegedly suggested the officers "engage in conduct meant to intimidate Plaintiff."  FAC ¶ 68.

Plaintiff leased the home he shared with his wife, which clearly established Plaintiff's Fourth Amendment right to not be unreasonably removed from the home.  *See* FAC ¶ 15.  Plaintiff also told Defendant Chavez he did not intend to terminate the lease for his home at that time.  *Id*. ¶ 74.  Plaintiff states that Defendants Jorge and Chavez implied the use of physical force against Plaintiff was imminent through their threatening language and attempts to coerce him out of the home by telling him he had no right to be there.  *Id*. ¶¶ 68-72, 108-110.

The FAC pleads the violation of a plainly applicable constitutional right under the Fourth Amendment.  It is plausible, based on the allegations, that the actions of Defendants Jorge, Chavez, and Doe were made in an attempt to threaten, intimidate, or coerce Plaintiff

out of his house.  Plaintiff provides sufficient facts for the Court to infer specific intent as to Defendants Jorge, Chavez and Doe.   Accordingly, Defendant's Motion to Dismiss Plaintiff's Fourth Claim is DENIED.

## V. Plaintiff's Fifth Claim: Ralph Act

Defendants argue Plaintiff's allegations supporting his Ralph Act claim are conclusory.  They further argue political affiliations are not an enumerated protected class under the Ralph Act.  Plaintiff argues, in opposition, that political affiliation is a protected class.

The Ralph Act protects persons from any violence, or intimidation by threat of violence, committed against them or their property because of political affiliation, among other protected classes.  Cal. Civ. Code § 51.7; *see also* Cal. Civ. Code §51(b), (e).  To establish a claim under California's Ralph Act, a plaintiff must show that: (1) the defendant threatened or committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of plaintiff's protected characteristic; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm.  *Warren v. Marcus*, 78 F.Supp.3d 1228 (N.D. Cal. 2015); *Campbell v. Feld Entertainment, Inc.*, 75 F.Supp.3d 1193 (N.D. Cal. 2014).

Plaintiff asserts Defendant Jorge and the City of San Diego violated his rights under the Ralph Act when Defendant Jorge yelled "I'm not going to argue about it anymore[]" and put on latex gloves.  *See* FAC ¶¶ 109, 116.  Plaintiff alleges a "motivating reason for Jorge's conduct was his perception of Plaintiff's political affiliation." *Id*. ¶ 116.  Plaintiff further alleges his "doormat, public criticism of police, public support for criminal justice reform and oversight of law enforcement agencies, and employment as a defense attorney for indigent clients" impacted Defendant's perception of Plaintiff.  *Id.*

Political affiliation is a protected characteristic under the Ralph Act.  Cal. Civ. Code § 51.7(b); *see also Black Lives Matter Stockton Chapter v. San Joaquin Cty. Sheriff's Office*, 398 F.Supp.3d 660, 679 (E.D. Cal. 2019).  Viewing the facts in the light most favorable to the Plaintiff, it is plausible that Defendant Jorge's actions threatened violence

against Plaintiff.  However, Plaintiff does not allege sufficient non-conclusory facts indicating his political affiliation motivated Defendant Jorge's actions.  Although Plaintiff's FAC mentions that Defendant Chavez asked him what type of law he practices, Plaintiff does not indicate he answered Defendant Chavez or that Defendant Jorge heard the exchange.  The FAC is also silent as to Defendant Jorge's knowledge of Plaintiff's prior public statements.  Lastly, Plaintiff's doormat, which read, "COME BACK WITH A WARRANT" does not identify Plaintiff's political affiliation.  Absent such allegations, the Court cannot infer that Defendant Jorge's alleged threats of violence were motivated by Plaintiff's political affiliations.  Accordingly, Defendants' Motion to Dismiss Plaintiff's Fifth Claim is GRANTED.

**VI. Plaintiff's Sixth Claim: California Government Code Section 815.6**

Defendants argue any claims against Defendant Nisleit in his official capacity are redundant of a suit against the entity to which he is an agent.  Defendants also argue there are no allegations of any individual conduct by Nisleit.  Defendants further contend Section 13701 does not impose any clear mandatory duties upon Defendant Nisleit because it "is not the type of enactment that requires the automatic obligation to perform a function to satisfy the requirements of § 815.6."  Defs' Motion at 15.

In his Opposition, Plaintiff voluntarily dismisses this claim as to Defendants Jorge and Chavez but maintains this claim against the City of San Diego and Defendant Nisleit. He further argues Penal Code Section 13701 and 836 imposed a mandatory duty on Defendants Nisleit and the City of San Diego to adopt a written procedure for officers to determine the dominant aggressor when responding to domestic violence incidents.

Under Government Code Section 815.6, "a public entity is liable for an injury proximately caused by its failure to discharge a mandatory duty designed to protect against the risk of a particular kind of injury . . ."  Cal. Govt. Code § 815.6.  To establish a *prima facie* basis for liability on breach of mandatory duty claim under California law, a plaintiff must show: (1) the enactment imposes mandatory, not discretionary, duties; (2) the enactment is intended to protect against the kind of risk of injury suffered by the plaintiff;

24-cv-01118-JAH-BJC

and (3) the breach of that mandatory duty is the proximate cause of the plaintiff's injury. *San Mateo Union High Sch. Dist. v. Cnty. of San Mateo*, 213 Cal. App. 4th 418, 428 (2013).

Whether a particular statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts. *Nunn v. State of California*, 35 Cal.3d 616, 624 (1984). A mandatory duty is one that is "*obligatory*, rather than merely discretionary or permissive, in its directions to the public entity". *Haggis v. City of Los Angeles*, 22 Cal.4th 490, 498 (2000) (emphasis in original). The inclusion of the term "shall" in an enactment "is generally mandatory," although courts "are not permitted to pluck this phrase out of its placement in the statute and consider it in isolation". *People v. Anderson*, 88 Cal.App.5th 233, 239 (2023). Rather, an enactment is mandatory "only where the. . .commanded act [does] not lend itself to normative or qualitative debate over whether it was adequately fulfilled." *Cty. of Los Angeles v. Super. Ct.*, 209 Cal.App.4th 543, 546 (2012).

Plaintiff alleges Defendant Nisleit, former Chief of Police for the SDPD, failed to perform his mandatory duty to develop, adopt, and implement written policies and standards for officers to use to determine the dominant aggressor in situations of domestic violence, as outlined by California Penal Code Section 13701(a)(b). FAC ¶ 119. Plaintiff alleges Defendant Nisleit's failure to perform was a substantial factor in Plaintiff's harm because the officers "incorrectly determined that Plaintiff was the dominant aggressor and became biased against him." *Id*. ¶ 122. Lastly, Plaintiff alleges Defendant City is liable for Defendant Nisleit's failure to perform mandatory duties pursuant to Cal. Gov. Code Section 815.6. FAC ¶ 124.

Section 13701 states every law enforcement agency "shall develop, adopt, and implement written policies and standards for officers' responses to domestic violence calls." Cal. Pen. Code § 13701(a). It further directs that "[p]eace officers shall make reasonable efforts to identify the dominant aggressor in any incident." Cal. Pen. Code § 13701(b).

The relevant language from Sections 13701(a) and (b) include obligatory language. *See Motley v. Smith*, 2016 WL 6988597, at *5 (E.D. Cal. 2016) (Holding Section 13701(b) "appear[s] to impose a mandatory duty to arrest in certain situations."). Furthermore, Sections 13701(a) and (b) do not include language which encourages constant review of the written policies to ensure public protection. Instead, they mandate the implementation of written policies regarding the determination of a dominant aggressor and provide four clear factors officers are to consider in making that determination. *Id*.

Plaintiff asserts Defendant Nisleit was the Chief of Police at the time of the incident. FAC ¶ 15. As chief of police, Plaintiff claims it was Nisleit's duty to impose a policy to satisfy Section 13701 but he failed to do so. FAC ¶ 119. Plaintiff contends, if Nisleit had implemented an adequate policy for determining the dominant aggressor as required by Section 13701, then officers Jorge and Chavez never would have invaded his home, and Plaintiff would not have suffered the emotional distress he experiences today. *Id*. ¶¶ 121-23. These facts, taken as true, are sufficient to demonstrate Nisleit's failure to implement a policy proximately caused Plaintiff's emotional distress. Accordingly, Defendants' Motion to Dismiss Defendant Nisleit and Plaintiff's Sixth Claim is DENIED.

## VII. Plaintiff's Eighth Claim: Negligence

Defendants argue Plaintiff fails to allege a cognizable injury to support his negligence claim, and Plaintiff's FAC does not sufficiently allege any Defendants acted unreasonably nor that the behavior harmed Plaintiff. Additionally, Defendants contend Plaintiff cannot proceed on a general negligence cause of action against Defendant City of San Diego because liability against a public entity must be grounded solely on a statute.

Plaintiff's Eighth Claim asserts his negligence claim against Defendants City of San Diego, Shihadeh, and Chase.

### A. Defendants Shihadeh and Chase

"To prove negligence, a plaintiff must show that the defendant owed the plaintiff a duty of care, breached that duty and the breach caused the plaintiff harm." *Sharufa v. Festival Fun Parks, LLC*, 49 Cal. App. 5th 493, 498 (2020).

24-cv-01118-JAH-BJC

In the FAC, Plaintiff alleges Defendants Chase and Shihadeh owed him a duty of ordinary care pursuant to California Civil Code Section 1714(a) and breached that duty by "forcefully and loudly entering the home of someone known to them to be a victim of domestic violence then refusing to leave when the victim objected to their presence." FAC ¶¶ 162, 163. He further alleges he was "emotionally distressed" by Defendants' conduct and their conduct was a substantial factor in causing him harm. *Id.* ¶¶ 164-65.

Plaintiff sufficiently alleges a causal connection between the actions of Defendants Shihadeh and Chase and his emotional distress to sustain a claim of negligence. Plaintiff's alleged injury, emotional distress including anxiety, post-traumatic stress disorder, and depression, appear "concrete and particularized" as well as "actual" rather than "conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Therefore, Plaintiff has sufficiently alleged facts necessary to state a claim for negligence against Defendants Shihadeh and Chase. Accordingly, Defendants' Motion is DENIED as to the Eighth Claim relating to Defendants Shihadeh and Chase.

## B. Plaintiff's Eighth Claim as to the City of San Diego.

Under California law, a public entity is not liable for an injury arising out of an act or omission by the entity or its employees unless a statute specifically provides otherwise. Cal. Gov. Code Sec. 815 (a)-(b). However, a public entity is vicariously liable for an injury that is proximately caused by an act or omission of an employee of the public entity within the scope of their employment, except where the employee is immune from liability. Cal. Gov. Code § 815.2 (a)-(b); *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175, 1179-1180. As such, Defendants' Motion to Dismiss the Eighth Claim as to Defendant City of San Diego is DENIED.

## VIII. Plaintiff's Request for Punitive Damages

Defendants request the Court strike Plaintiff's request for punitive damages. They argue Plaintiff's allegations of evil intent or that Defendants acted with reckless or callous indifference are conclusory. Plaintiff contends he sufficiently alleges Defendants were motivated by evil intent.

24-cv-01118-JAH-BJC

Under California law, punitive damages are available when a complaint alleges ultimate facts of the defendant's oppression, fraud, or malice to support an award of punitive damages. Cal. Civ. Code § 3294. General conclusory assertions that a defendant acted with malice or conscious disregard for a plaintiff's rights are adequate to plead the mental state required under Section 3294. *See Clark v. Allstate Insurance Company*, 106 F.Supp.2d 1016, 1020 (S.D. Cal. 2000).

Under federal law, punitive damages are appropriate in a Section 1983 action when the defendant's conduct is shown to be motivated by "evil motive or intent" or when it involves "reckless or callous indifference to the federally protected right of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Plaintiff seeks punitive damages, in an amount to be proven at trial, for Defendant Nisleit's act of claiming reimbursement funds from the state for the program he did not implement, Defendant Jorge's alleged coercion and implicit threat of violence against Plaintiff, and for Defendants Chase and Shihadeh's prolonged search of Plaintiff's home. FAC ¶ 183.

Aside from Plaintiff's request for punitive damages for Defendant Nisleit's receipt of funds, the FAC is silent as to these funds. Furthermore, Plaintiff fails to assert any allegations as to Defendant Nisleit's evil motive or intent or malicious conduct in not implementing a procedure for determining the dominant aggressor to support his request for punitive damages. As such, this does not support punitive damages.

However, at this stage, Plaintiff sufficiently alleges facts to demonstrate Defendants Jorge, Chase and Shihadeh acted with a "reckless or callous indifference" toward Plaintiff's Fourth Amendment rights to support punitive damages. As such, Defendants' request to strike punitive damages is DENIED.

## XI. Plaintiff's Request for Declaratory Relief

Plaintiff requests a declaration that the City of San Diego's Procedure 4.04, as it pertains to procedure for determining a dominant aggressor in a domestic violence incident, is unconstitutional because it does not afford due process to parties involved. FAC ¶ 184.

Defendants argue Plaintiff's FAC fails to establish a substantial controversy, and therefore the Declaratory Judgment Act precludes an award of declaratory relief. In his Opposition, Plaintiff states he has shown with substantial likelihood that he will be subject to Procedure 4.04 in the next two years, which he alleges sufficiently shows there is a "substantial risk" that harm will occur.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The "facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). A plaintiff must also establish standing by showing a concrete and particularized legal harm, and a sufficient likelihood of future harm if the relief is not granted. *Meinecke v. City of Seattle*, 99 F.4th 514, 520 (9th Cir. 2024).

Here, Plaintiff's FAC sufficiently alleges a substantial controversy between the parties regarding the constitutionality of Defendant City's Procedure 4.04. However, Plaintiff's request for declaratory relief is silent as to the likelihood of future harm if declaratory relief is not granted. Plaintiff's additional allegations in his opposition that he will suffer such future harm will not be considered by this Court. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (Noting that new allegations raised in opposition "are irrelevant for 12(b)(6) purposes.") Accordingly, Defendants' Motion to Dismiss Plaintiff's request for declaratory relief is GRANTED.

## CONCLUSION AND ORDER

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part. The Motion is **GRANTED** as to Plaintiff's First and Fifth Claims, and Defendants'

24

request to strike Plaintiff's prayer for declaratory relief.  The Motion is **DENIED** as to the remaining claims.

2. Plaintiff may file a Second Amended Complaint to cure the deficiencies noted **no later than October 10, 2025**.

DATED:  September 10, 2025

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE

24-cv-01118-JAH-BJC